IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVATORE AND SUSAN PILEGGI, | No. C 12-01333 WHA |
| Plaintiffs, | |
| v. | **ORDER DENYING CLASS CERTIFICATION** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

### INTRODUCTION

In this proposed class action involving allegedly discriminatory loan practices, plaintiffs move for class certification. For the reasons stated below, the motion is **DENIED**.

### STATEMENT

**1. THE EQUAL CREDIT OPPORTUNITY ACT.**

The Equal Credit Opportunity Act makes it unlawful to "discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis of several protected categories, including age. 15 U.S.C. 1691(a)(1). The purpose of the statute is to promote the availability of credit to all creditworthy applicants, 12 C.F.R. 202.1(b), and it "establishes as clear national policy that no credit applicant shall be denied on the basis of characteristics that have nothing to do with his or her creditworthiness." *Miller v. Am. Exp. Co.*, 688 F.2d 1235, 1239 (9th Cir. 1982).

The ECOA implementing regulations specify that "[a] creditor shall not discount or exclude from consideration the income of an applicant or the spouse of an applicant because of a

prohibited basis or because the income is . . . an annuity, pension, or other retirement benefit; [however] a creditor may consider the amount and probable continuance of any income in evaluating an applicant's creditworthiness." 12 C.F.R. 202.6(b)(5). "A creditor must evaluate income derived from . . . retirement benefits . . . on an individual basis . . . and must assess its reliability or unreliability by analyzing the applicant's actual circumstances." 12 C.F.R. pt. 1002, Supp. I, ¶6(b)(5). "In considering the separate components of an applicant's income, the creditor may not automatically discount or exclude from consideration any protected income." *Ibid*.

"Discriminate against an applicant means to treat an applicant less favorably than other applicants." 12 C.F.R. 202.2(n). Discrimination under the ECOA occurs when one of its provisions or implementing regulations is violated; no showing of specific intent to discriminate is necessary. *Miller*, 688 F.2d at 1235.

### 2. THE PILEGGI'S LOAN DENIAL.

Plaintiffs advance the following facts in support of their motion. In 2006, plaintiffs Salvatore and Susan Pileggi received a residential mortgage loan from Wachovia Mortgage Corporation, the predecessor in interest of defendant Wells Fargo Bank, N.A. In December 2010, plaintiffs applied for refinancing of their mortgage through Wells Fargo's Home Affordable Refinancing Program Three-Step Express program. Plaintiffs were both under 59.5 years of age at the time. Plaintiffs' income to support the refinancing application consisted of early withdrawals from Mrs. Pileggi's IRA account. She was able to withdraw from the IRA account without penalty under a Substantially Equal Periodic Payment Plan.

In January 2011, a Wells Fargo representative verbally informed plaintiffs that the application had been denied because the IRA income (meaning the withdrawals of the IRA assets) would not be considered income supporting the application. A notation by an underwriter on plaintiffs' account specifically stated: "We have been instructed that to use IRA income, borr[ower] must be 59.5 yrs old, no matter what." A subsequent underwriter notation on the account likewise stated that "IRA Income could not be used due to the borrower not being

59.5." A Wells Fargo representative subsequently told plaintiffs in a letter that the retirement income did not qualify for the application because Mrs. Pileggi was not of retirement age.

During the same time period, plaintiffs also attempted to secure a Home Affordable Modification Program loan modification from Wells Fargo. In internal correspondence, a Wells Fargo underwriter stated that the SEPP IRA income could not be used as income to qualify for the HAMP program.

Wells Fargo admits that its failure to consider Mrs. Pileggi's IRA income was erroneous. Wells Fargo further admits that it has a policy of considering retirement income in approving loan applications, but contends that it gives its underwriters a measure of discretion that comports with the statutory requirement that consideration of retirement income be based on an applicant's actual circumstances. Wells Fargo denies that it has a universal policy of excluding retirement income relied upon by applicants under 59.5 years of age, but admits that it has a policy of excluding income from retirement benefits calculations when the retirement income is being withdrawn from an account subject to a penalty.

Plaintiffs recently refinanced their loan with another bank at a "less favorable rate" than what they allegedly would have received from Wells Fargo. Plaintiffs state in their moving papers and declarations that they would return to Wells Fargo if they could use the SEPP IRA as qualifying income.

Plaintiffs filed this suit in March 2012 and now seek to certify the following class for declaratory and injunctive relief under Rule 23(b)(2):

> All individuals who have applied or will apply for a home loan, loan modification, or loan refinancing from Wells Fargo Bank, N.A. ("Wells Fargo"), at any time since March 16, 2010, who at the time of application: (a) were or will be under the age of 59.5; and (b) included or will include income drawn from an Individual Retirement Plan ("IRA"), 401(k), 403(b), Keogh Plan or other qualified retirement plan in support of their applications.

**ANALYSIS**

Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity of the class; (2) there are common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the representative parties can

fairly and adequately protect the interests of the class. In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d. 1075, 1089 (N.D. Cal. 2011). Certification under Rule 23(b)(2) requires the additional finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The Supreme Court has recently restated the evidentiary analysis applicable to class certification under Rule 23:

> [A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). . . . [I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and . . . certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. The same analytical principles govern Rule 23(b).

*Comcast Corp. v. Behrend*, ___ U.S. ___, slip. op. at 5–6 (Mar. 27, 2013) (quotation marks and citations omitted, emphasis in original).

**1. STANDING.**

Wells Fargo contends that, as a threshold matter, plaintiffs lack Article III standing. This order disagrees. "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

4

Both parties rely on a recorded history of notes entered into plaintiffs' Wells Fargo account. As explained above, this history contains multiple entries stating Mrs. Pileggi's IRA income would not be considered due to her age (*see, e.g.*, Dkt. No. 42 at 2). Wells Fargo also informed plaintiffs by letter that Mrs. Pileggi's retirement income could not be used because of Mrs. Pilegggi's age (Dkt. No. 35-1 at WF00072). Wells Fargo nevertheless contends that plaintiffs cannot show an injury in fact because plaintiffs' refinancing application was denied for reasons other than Mrs. Pileggi's age and use of retirement income. Wells Fargo's contentions are unpersuasive.

Wells Fargo's first iteration of this argument attempts to reframe the January 2011 denial of plaintiffs' application. Plaintiffs sought to refinance or modify their loan on multiple occasions starting in 2009. Pointing to the loan history notes, Wells Fargo argues that the January 2011 denial was just one among a series of legitimate denials. Assuming that Wells Fargo's contention is true as to the other denials, this fact does not color the interpretation of the January 2011 denial. The loan history notes directly referring to Mrs. Pileggi's age are stronger evidence of the basis for denying the application.

Wells Fargo also contends that the loan history notes show a separate and independent reason for the January 2011 denial. The first level underwriter recommended denial because of a "job gap," which refers to an applicant's inability to contribute the same amount of income as when the original loan application was filed (*id.* at 2). Wells Fargo contends that a subsequent entry from a second-level review "affirmed" the job gap denial. Yet, the same initial entry relied upon by Wells Fargo also states that Mrs. Pileggi's IRA "income will not be allowed because [she] is not of age."

Wells Fargo contends that this evidence shows that the Pileggis' application would have been denied anyway. Even if true, this would not permit Wells Fargo to simultaneously rely on a discriminatory motive for denying the application. The record at present shows Wells Fargo considered two reasons sufficient for denying plaintiffs' loan application, one of which runs afoul of ECOA. For the purposes of the present motion, plaintiffs have adduced adequate evidence that they suffered an injury that is traceable to an alleged Wells Fargo decision not to

5

consider retirement income due to plaintiffs' age. The issue is akin to the mixed-motive problem in discrimination cases and, although it must be litigated at trial, is not enough to reject the claim.

Wells Fargo also contends that plaintiffs lack standing because they cannot show a likelihood of future harm. Plaintiffs seek only injunctive relief — not damages — and have already taken the step of refinancing their loan with another bank. "Past wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy but are evidence bearing on whether there is a real and immediate threat of repeated injury." *Ellis*, 657 F.3d at 979. Plaintiffs have expressed a desire to return to Wells Fargo as customers in order to get better rates on their loans. Taking plaintiffs' allegations as true, they would risk a repetition of the same harm: Mrs. Pileggi's IRA income not being counted as income for their loan application. If Wells Fargo's alleged discriminatory practice were enjoined, the Pileggis' claimed threat would be redressed.

### 2. THE PROPOSED CLASS IS OVERBROAD.

As noted above, plaintiffs propose the following 23(b)(2) class definition:

> All individuals who have applied or will apply for a home loan, loan modification, or loan refinancing from Wells Fargo Bank, N.A. ("Wells Fargo"), at any time since March 16, 2010, who at the time of application: (a) were or will be under the age of 59.5; and (b) included or will include income drawn from an Individual Retirement Plan ("IRA"), 401(k), 403(b), Keogh Plan or other qualified retirement plan in support of their applications.

Wells Fargo objects that this definition is overbroad. This order agrees. This class definition encompasses four distinct subgroups: (1) individuals whose loan applications were denied after March 16, 2010, (2) individuals whose loan applications were approved after March 16, 2010, (3) individuals whose loan applications remain pending, and (4) individuals who will apply in the future. At least the first two subclasses are problematic.

*First*, for those individuals whose applications were denied, the record does not demonstrate whether there is any likelihood that they will have further interactions with Wells Fargo. Individuals who subsequently chose to reapply with another bank may have no reason to return to Wells Fargo. Injunctive relief would not provide them with any benefit. It is possible

6

that some such individuals might have a continuing relationship with Wells due to other accounts, or, like the Pileggis, reserve an intention to one day return to the Wells Fargo fold. But on the current record this is speculation. Plaintiffs have not come forward with evidence sufficient under *Behrend* to show that any individuals whose applications were denied and who want to return to Wells Fargo exist (other than themselves).

*Second*, there is no evidence that individuals whose loan applications were approved notwithstanding the alleged policy were harmed. Thus, injunctive relief would not provide them any benefit either. Plaintiffs contend that loan approval, despite a discriminatory policy, can still be actionable because the discrimination may result in less favorable terms to the applicant. This is plausible but unsubstantiated. Plaintiffs have not come forward with sufficient evidence under *Behrend* demonstrating that any applicants who received less favorable terms exist.

Individuals in the third and fourth categories (whose applications are pending or who will someday apply) could plausibly benefit from relief. Certifying a class of these individuals would require redrafting and substantially narrowing plaintiffs' proposed class definition, which this order declines to do. As will be further explained below, even if plaintiffs had come forward with an appropriately limited class definition, on the present record it would nevertheless be denied.

### 3. RULE 23(A) REQUIREMENTS.

Rule 23(a)(1) mandates that the proposed class be "so numerous that joinder of all members is impracticable." Plaintiffs bear the burden of establishing that this basic requirement is met. They have not done so.

Following oral argument on plaintiffs' motion for class certification, the parties were permitted an additional four weeks of discovery and ordered to submit supplemental briefs regarding (1) how to identify individual class members and (2) how to determine whether such individuals were treated unfairly (Dkt. No. 50 at 39). The parties twice requested extensions to the discovery period, both of which were granted, resulting in a total of nine weeks of additional discovery (Dkt. Nos. 46, 48, 52–58).

7

The additional discovery revealed that it is not possible to identify class members solely on the basis of Wells Fargo's electronic files. As plaintiffs concede (Supp. Br. 11):

> Plaintiffs' supplemental discovery confirmed that it would be unfeasible to identify class members through a mechanical [*i.e.* automated] search of Wells Fargo's . . . databases. Wells Fargo's databases may be queried to obtain a list of all applicants who applied for home loans or refinancing since March 16, 2010, and who were under the age of 59.5 at the time the application was submitted. However, the other key element of the class definition — whether an applicant included or will include income drawn from an IRA, 401(k), 403(b), Keogh Plan or other qualified retirement plan in support of their applications — cannot be identified by conducting a query of Wells Fargo's databases.

Whether a sufficient number of class members could have been identified using more traditional methods is not apparent from the record. Regardless, apart from their own experience, plaintiffs have not submitted *any* evidence regarding the constituents of the proposed class. The upshot is that class numerosity has not been established.

The problems created by this inability to identify class members do not stop at numerosity. Presumably, a large number of individuals under the age of 59.5 have applied for Wells Fargo home loans or refinancing since March 16, 2010, or will do so in the future. Yet those who also relied or will rely on retirement income — even if the number or percentage were known — may not all be similarly situated. For example, individuals whose retirement income is subject to early withdrawal penalties are not necessarily on the same playing field as the Pileggis, whose SEPP IRA income could be withdrawn without penalty. Such individuals would be subject to Well's Fargo's defense that it may properly exclude certain types of retirement income on the basis of such penalties — a defense not faced by the Pileggis.

A more complete understanding of the proposed class would show whether class definition can be used as is, or whether subclasses are necessary for commonality under Rule 23(a)(2). It would also show whether the individuals in the class or subclasses are sufficiently numerous, and whether the Pileggis' experience was typical under Rule 23(a)(3). On the present record these questions cannot be answered.

The deadline for plaintiffs' class certification motion expired on February 28. Plaintiffs were afforded substantial additional time to conduct class discovery in support of their motion.

8

1  Nevertheless, they have not met their evidentiary burden under Rule 23. The motion is **DENIED**.
2  No further motions for class certification will be permitted.

### CONCLUSION

Plaintiffs' motion for class certification is **DENIED**. The action shall now move forward on the plaintiffs' individual claims.

**IT IS SO ORDERED.**

Dated: August 14, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE